IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| James Porter, | )<br>)<br>) |
| Plaintiff, | ) No. 05 C 2470 |
| vs. | )<br>) |
| Time4Media, Inc., Chris Wightman, and Mark Ford, | )<br>) The Honorable William J. Hibbler |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff James Porter sued Defendant Time4Media, Inc, and two of its executives, alleging that Defendants violated the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 et seq. (Counts I & II). Additionally, Plaintiff alleged that Time4Media acted in an attempt to defraud Plaintiff (Count III) and a state law claim of conversion (Count IV). Before the Court are cross-motions for summary judgment.[1] For the following reasons, Plaintiff's motion for partial summary judgment is DENIED. The Defendants' motion for summary judgment is GRANTED as to Counts II and IV; and DENIED as to all other counts.

### I. Factual Background

#### A. The Parties

Defendant Time4Media ("Time4Media"), a subsidiary of Time, Inc., is a Delaware Corporation with its principal place of business in the State of New York. (Def 56.1(a)(3) ¶ 2).

---

[1] Plaintiff's motion seeks partial summary judgment on the statutory wage claim. Defendants' motion seeks summary judgment on all claims.

1

From 1997 to 2005, Plaintiff James Porter ("Porter") worked as an advertising salesperson for Golf Magazine, which is published by Time4Media. (Pl. 56.1(a)(3) ¶¶ 2, 3). After being sold in 2000, Time4Media subsequently took over Golf magazine in 2002. (Def. 56.1(b)(3)(B) ¶ 3). At all relevant times, Defendant Chris Wightman ("Wightman"), a resident of New Jersey, was the publisher of Golf magazine; and Defendant Mark Ford, a resident of Connecticut, was the President of Time4Media. (Pl. 56.1(a)(3) ¶¶ 4,5).

**B. Ad Incentive Plan**

The dispute between the parties turns upon a provision in Time4Media's Ad Sales Incentive Plan. As an advertising salesperson for Golf Magazine, Porter earned his compensation through an annual salary in addition to earning commissions based upon generated sales revenue. In order to determine commission and bonuses, Time4media issued an Ad Sales Incentive Plan (the "Plan") which outlined the ways in which salespeople could earn commissions. In 2004, Time4Media issued the Plan to Porter, which detailed the process for determining Porter's commission and bonus for that year. (Pl. St., Exh. 5). The Plan identified two types of commissions: target commissions and over quota commissions. (Pl. St., Exh. 5 at 63-64). In particular, the Plan delineated Porter's 2004 target commission as $30,000, which was based upon a sales revenue target of $2,523,663 for that year. (Pl. 56.1(a)(3) ¶ 17). The Plan reflected that Porter's target commission earned would be based 75% upon achieved revenues and 25 % upon qualitative measures. (Pl. 56.1(a)(3) ¶ 17)(Def 56.1(a)(3) ¶ 34,35). Additionally, the Plan set forth the procedure for determining how any "over quota commission" sales, or bonus, would be calculated. (Pl. St., Exh. 5). Specifically, the Plan stated in relevant part:

### Over Quota Commission:

For all revenue over the assigned annual quota, payments will be made as follows:

    First 10% over quota          5% paid on this portion
    10-20% over quota           10% paid on this portion
    20% over quota              15% paid on this portion

Please note: the higher percentage payout only applies to the stipulated over quota revenue, and does not revert to all over quota revenue. For example, the 5% over quota payout would only apply to the initial 10% of over quota revenue. The 10% would apply to the revenue between 10 - 20% over quota.

There will be a review in the case that payout equals 2.5 times target.

(Id. pg. 64).

In 2004, Porter met 100% of his target commissions, generating revenue in excess of $4,000,000,[2] and 100% of his qualitative measures. (Pl. 56.1(a)(3) ¶ 20)(Pl. St., Exh. 9). Initially, in determining Porter's bonus, Time4Media utilized a formula, whereby a salesperson's total bonus would be calculated under the over quota commission formula until the amount totaled four times the salesperson's target commission, at which point any sales revenue over that amount would be multiplied by three percent. (Def 56.1(a)(3) ¶ 25). Time4Media reasoned that it was permitted to utilize this formula, rather than the "over quota commission" calculation set forth in the Plan, based upon language in the Plan that provided "There will be a review in the case that payout equals 2.5 times target." (Def 56.1(a)(3) ¶ 37). In July, 2004, Porter met with Golf Magazine management, who informed Porter that his bonus would be capped at $150,000, and the rest of his payout would

---

[2] Although the parties dispute the amount of Plaintiff's actual 2004 revenue, the exact amount of his total revenue for 2004 is not a material fact.

3

be multiplied by 3%. (Def. 56.1(a)(3) ¶ 38). Porter objected to Time4Media's calculation of his bonus and its interpretation of the review clause during several meetings with Time4media's management. According to Porter, his bonus should have been calculated pursuant to the stated formula for "over quota commissions" as specifically set forth in the Plan. Therefore, according to Porter, the Plan precluded Time4Media from using any other calculation for determining his bonus other what was stated in the Plan. Subsequently in 2004, Time4Media recalculated Porter's commission at a total of $75,000, approximately 2.5 times Porter's $30,000 target commission. (Pl. 56.1(a)(3) ¶ 22)(Pl. St., Exh. 9). In capping Porter's commission at $75,000, Time4Media argued that it interpreted the review language contained in the Plan as permitting them to cap a salesperson's commission, once the salesperson achieved 2.5% of their target commission. (Pl. 56.1(a)(3) ¶¶ 23,25).

## C. Severance Package

On March 2, 2005, Time4Media terminated Porter and offered him a severance package. (Def 56.1(a)(3) ¶¶ 52,53). Time4Media's severance plan requires that employees sign an agreement and general release form. (56.1(a)(3) ¶ 58)(Def. Exh. 32). Upon his termination, Time4Media forwarded the agreement and release form to Porter, offering a severance package. (56.1(a)(3) ¶ 56)(Def. Exh. 33). Porter refused to sign the severance letter and general release, and therefore was not paid a severance. (56.1(a)(3) ¶ 57).

## II. Standard of Review

Summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265

(1986). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). For the fact to be material, it must relate to a disputed matter that "might affect the outcome of the suit." *Id.* And neither "the mere existence of some alleged factual dispute between the parties," *Id.*, 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), is sufficient to defeat such a motion.

All facts and inferences are viewed in the light most favorable to the non-moving party. *Matsushita,* 475 U.S. at 587. The party opposing summary judgment, however, must go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial. *Anderson,* 477 U.S. at 250. When both parties have moved for summary judgment, the court therefore construes the facts in the light most favorable to the non-moving party and both parties must demonstrate that no genuine issue of material fact exists. *Allen v. City of Chicago.*, 351 F.3d 306, 311 (7th Cir. 2003). Each movant must individually satisfy the requirements of Rule 56 in order to prevail. *ABC v. Maljack Prods., Inc.*, 34 F. Supp. 2d 665, 669 (N.D. Ill. 1998).

### III. Analysis

#### A. Illinois Wage Payment Act

Count I of the Complaint alleges a statutory claim for unpaid commission bonuses pursuant to the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 ("Wage Act" or "Act") which provides a cause of action for employees seeking wages owed to them. *See generally* 820 ILCS 115/1 et seq. In his motion, Porter contends that he is entitled to summary judgment because the "Over Quota Commission" language contained in his 2004 Ad Incentive Plan mandates that

5

Time4Media pay a 15% commission on all earned revenue at 20% over quota. According to Porter, the "review" provision in the Plan does not permit Time4Media to limit or cap the bonus earned by salespeople. Porter further argues that contrary to Plans which contain disclaimers advising employees that bonuses are discretionary, the Time4Media Plan only contained language indicating that bonuses would be reviewed, not limited to a certain amount pursuant to management discretion. *See e.g. Rakos v. Stytel Corp.*, 954 F. Supp. 1234, 1238 (N.D. Ill. 1996)(holding that a compensation plan "did not create an enforceable contract as a matter of law because it did not contain a clear right to bonus commissions). Plaintiff contends that his interpretation of the contract is consistent with the plain language of the Plan and the only reasonable interpretation is that Time4Media would pay a 15% commission on all amounts at 20% over quota. Thus, Plaintiff argues while the plain language of the "review" provision permitted Time4Media to review over quota commissions, it did not also provide them with the right to cap bonuses.

Conversely, Defendants' asserts that the "review" provision unambiguously noticed Porter that bonuses in excess of 2.5 times his commission target would be subject to management review and were deemed discretionary. As such, pursuant to this provision, Porter's bonus would be reviewed when the bonus calculation equals 2.5 times his commission target. According to Defendants, in order to give effect the "review" provision has to be read in conjunction with the "over quota commission" language. Reading the Plan in its entirety, these provisions explicitly call for management review of over quota commissions when that payout equals 2.5 times the quota.

   1.   Time4Media

Summary judgment is a particularly appropriate mechanism for resolving cases involving the interpretation of written contracts. *International Union of United Auto., Aerospace and Agric.*

*Implement Workers of Am., et al. v. Rockford Powertrain, Inc.*, 350 F.3d 698, 703 (7th Cir. 2003); *Moriarty v. Svec.*, 164 F.3d 323, 330 (7th Cir. 1998). Under Illinois Law, contract interpretation - - including the question of whether or not a contract is ambiguous - - is a legal question for the courts to determine. *Brooklyn Bagel Boys, Inc. v. Earthgrains Refrigerated Dough Products, Inc.*, 212 F.3d 373, 378 n.1 (7th Cir. 2000)(*citing Metalex Corp. v. Uniden Corp. of Am.*, 863 F.2d 1331, 1333 (7th Cir. 1988)); *Meyer v. Marilyn Miglin, Inc.*, 273 Ill. App. 3d 882, 888, 652 N.E.2d 1233, 210 Ill. Dec. 257 (1995). When construing contracts, courts must ascertain and give effect to the parties' intent. *USG Corp. v. Sterling Plumbing Group, Inc.*, 247 Ill. App. 3d 316, 318, 617 N.E.2d 69, 70, 186 Ill. Dec. 830 (1993). The parties' disagreement regarding the interpretation of a contract does not make it ambiguous. *Meyer*, 273 Ill. App. 3d at 888. If the contract terms are unambiguous, the parties' intent must be ascertained exclusively from the express language of the contract. *Farm Credit Bank of St. Louis v. Whitlock,* 144 Ill.2d 440, 447, 581 N.E.2d 664, 667, 163 Ill. Dec. 510 (1991). A contract term is ambiguous when it may reasonably be interpreted in more than one way. *Dean Management, Inc. v. TBS Const., Inc.*, 339 Ill. App. 3d 263, 269, 790 N.E.2d 934, 939, 274 Ill. Dec. 161 (2003).

Both parties move for summary judgment on Count I for breach of contract against Time4Media. Here, the parties agree on the material facts, but each party offers a different interpretation of the contract. Upon review of the Plan, it is clear that a review will occur in the event payout of over quota commissions equals 2.5 times the target. The Plan, however, contains no language specifically indicating whether or not this review would result in Time4media utilizing another method to calculate Porter's bonus. Moreover, there is nothing in the Plan that states, upon that review, Time4Media would be limited to solely using the calculations in the Plan for

determining a bonus in the situation where the payout equals 2.5 times the target. Thus, the Plan provides limited guidance in resolving the dispute on whether it was permissible to cap Porter's bonus. There is ambiguity as to the scope of the disputed provision because it is unclear how management review would affect the over quota commission bonus. The disputed evidence establishes that there are genuine issues of material fact that must be presented to the trier of the act. Accordingly, this Court must deny the cross-motions for summary judgement on Count I because this Court has found that Porter's Ad Incentive Plan is ambiguous and there is support in the record presented for the dispute of an issue of material fact.

2. Chris Wightman and Mark Ford

In Count II of his complaint, Plaintiff alleges that Wightman and Ford violated the Wage Act by knowingly permitting Time4Media to violate the Wage Act by refusing to pay Porter's "over quota commission" as set forth in the Plan. Plaintiff argues that as officers of Time4Media, Wightman and Ford are liable as employers under the Act pursuant to 820 ILCS 115/13. Time4Media argues that the Wage Act does not apply to Wightman and Ford because they are neither employers nor employees in Illinois subject to the purview of the Act.

The Illinois Wage Act provides employees a cause of action to collect payment of earned wages or final compensation due to them. *See generally* 820 ILCS 115/4 - 115/6. The Act "applies to all employers and employees in this State . . . ." 820 ILCS 115/1. In Section 115/2, the Wage Act states that "the term 'employer' shall include any individual, partnership, association, corporation, business trust ***, or any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee, for which one or more persons is gainfully employed." 820 ILCS 115/2. Further, Section 13 of the Act provides, "any officers of a corporation or agents of an

8

employer who knowingly permit such employer to violate the provisions of this Act shall be deemed to be the employers of the employees of the corporation." 820 ILCS 115/13.

Our inquiry first begins on whether the Wage Act is applicable to employers outside of Illinois. The courts that considered this issue have concluded that the Wage Act only applies to Illinois employers. *See Maxwell v. Vertical Networks, Inc.* 2005 U.S. Dist. Lexis 7619, *29-31(N.D. Ill. March 18, 2005)(Ashman, J.); *Glass v. Kemper Corp.*, 920 F. Supp. 928, 931 (N.D. Ill. 1996), and *Khan v. Van Remmen, Inc.*, 325 Ill. App. 3d 49, 756 N.E.2d 902, 913, 258 Ill. Dec. 628 (2001). In both *Glass* and *Khan*, the courts analyzed the language of the Act and held that, when reviewing the Act as a whole, it is clear that the Illinois Wage Act applies only when both employer and employee are in Illinois. *Glass*, 920 F. Supp. at 932; *Khan*, 756 N.E.2d at 913. In reaching their holding, these courts specifically analyzed Section 115/7 of the Act which provides: "the Department of Labor shall be authorized to enter into agreements with other states to collect unpaid wages from out-of-state employers and to perform reciprocal services for such states in the State of Illinois," in conjunction with other provisions of the Wage Act. 820 ILCS 115/7. Both courts concluded that if employees could enforce the Wage Act with out of state employers, Section 115/7 authorizing the Illinois Department of Labor to enter into agreements with other states would be unnecessary and invalid. *Glass*, 920 F. Supp. at 931; *Khan*, 756 N.E.2d at 913 Moreover, both courts reasoned that applying the Wage Act to nonresident employers would constitute enforcement of an Illinois statute, thus violating the rule that an Illinois statute has no extraterritorial force and is operative only as to persons or things within Illinois. *Glass*, 920 F. Supp. at 932; *Khan*, 756 N.E.2d at 913.

This Court finds the conclusions reached in *Maxwell, Glass,* and *Khan*, that the Illinois Wage Act does not provide an Illinois employee with a cause of action against an out-of-state employer,

9

persuasive. While the Wage Act does provide that an officer or agent who knowingly permits an employer to violate the Act shall be deemed to be an employer, it is axiomatic that the agent or officer must also be under the purview of the Act. Time4Media has availed itself to the jurisdiction of Illinois, however, this does not necessitate that Wightman and Ford, as officers of Time4Media have done so also. This Court has before it no facts demonstrating that Wightman or Ford are Illinois employer's as defined by the Wage Act. Accordingly, Count II against Wightman and Ford is dismissed.

### 3. Jury Trial

Defendants, noting Plaintiff's request for a jury trial, argue that Plaintiff has no right to a jury trial on his claims of Wage Act violations. *See Catania v. Loval 4250/5050 of the Communications Workers of America*, 359 Ill.App.3d 718, 834 N.E.2d 966 (1st Dist. 2005). In *Catania*, the Illinois Appellate Court considered whether the Illinois Wage Payment and Collection Act provided a right to a jury trial. The court in its analysis contrasted a cause of action under the Wage Act to a common law action for breach of contract and concluded that the Wage Act was a separate and distinct action requiring the development of distinct elements. *Id.* That court reasoned a claim under the Wage Act "is a statutory proceeding unknown at common law and, as a consequence, no right to a jury trial exists in the absence of a stature conferring that right. *Id.* at 723. Finally, the *Catania* court held "that the Illinois Constitution does not confer the right to a jury trial for actions filed pursuant to the Wage Payment Act." *Id.* at 275. Accordingly, the Court strikes Plaintiff's request for a jury trial.

### 4. Claims for Prejudgment interest and Punitive Damages

In Count I of the Complaint, Plaintiff seeks prejudgment interest pursuant to the Illinois

Interest Act, 815 ILCS 205/2,[3] and punitive damages. (Comp. ¶¶ 43, 44.)[4] Defendants argue that plaintiffs request for prejudgment interest under the wage is controlled Section 14(b) of the Wage Act, which requires that an employer, who is ordered by the Director of Labor or Court to pay wages due an employee and fails to do so within the time allotted, is liable for statutory penalties of 1% per calendar day for the delay. 820 ILCS 115/14(b). In his response, Plaintiff concedes that at this juncture, he is not seeking punitive damages in Count I. Plaintiff, however, asserts that he asserts his claim pursuant to the Illinois Interest Act and not Section 14(b) of the Wage Act, therefore, he is not precluded from seeking prejudgment interest. This Court disagrees. The Wage Act specifically mandates under what circumstances a party may seek interest for wage claims. Section 14(b) provides that a party may only seek interest payments when an employer fails to pay wages, after being directed to do so, within a specific amount of time. The Court has found no other provision in the Wage Act permitting Plaintiff to seek prejudgment interest, nor has Plaintiff directed the Court to any statute or case law that reflects that it is permissible for Plaintiff to also seek prejudgment interest under the Wage Act. Accordingly, Plaintiff's request for prejudgment interest under Count I is dismissed.

---

[3]The Illinois Interest Act states: "Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing; on money lent or advanced for the use of another; on money due on the settlement of account from the day of liquidating accounts between the parties and ascertaining the balance; on money received to the use of another and retained without the owner's knowledge; and on money withheld by an unreasonable and vexatious delay of payment. In the absence of an agreement between the creditor and debtor governing interest charges, upon 30 days' written notice to the debtor, an assignee or agent of the creditor may charge and collect interest as provided in this Section on behalf of a creditor." 815 ILCS 205/2.

[4]Plaintiff also seeks punitive damages in Count III of his Complaint, which is not at issue here. (Comp. ¶ 63).

**B.     Fraud**

Porter also brings a claim for fraudulent inducement, the requirements of which are substantially similar to those for a fraud claim. Fraudulent inducement requires (1) a false statement of material fact by the defendant; (2) made with knowledge of its falsity; (3) reasonably relied upon by the plaintiff; (4) made for the purpose of causing the plaintiff to act; and (5) damage resulted from the plaintiff's reliance on the statement. *See LaScola v. U.S. Sprint Communications*, 946 F.2d 559, 567-68 (7th Cir. 1991), aff'd 417 F.3d 667 (7th Cir. 2005). For a promise to be actionable under a fraudulent inducement theory, the intention must be to "induce the promisee to act for the promisor's benefit." *U.S. ex rel. Ascher Bros. Co., Inc. v. Am. Home Assurance Co.*, 2003 U.S. Dist. LEXIS 21388 at *16 (N.D. Ill. March 18, 2003) (Lefkow, J.)(citations omitted). "[T]he burden on a plaintiff claiming promissory fraud is deliberately high" since this would otherwise convert many breach of contract claims into torts. *Id.* at *16 n.15 (citing *Bower v. Jones*, 978 F.2d 1004, 1012 (7th Cir. 1992)). Porter's claim for fraudulent inducement alleges that Time4Media fraudulently induced Porter to obtain sales revenue by promising to pay a bonus when it knew that it would not perform as promised.

Taking the facts in the light most favorable to Porter, it is possible that a finder of fact could determine that Time4Media fraudulently induced Porter to agree to seek higher sales in order to obtain a higher bonus. If a finder of fact determines that Time4Media's "over quota commission" represented to Porter that it would follow the terms of the Plan without any intention to do so, and that Porter relied on the Plan in seeking higher sales, Porter may be able to prove his claim for fraudulent inducement. Therefore, Time4Media's motion for summary judgment on this claim is

denied.

C. **Conversion**

Lastly, in Count IV of the Complaint, Porter alleges a claim of conversion. Under Illinois law, the elements of conversion include: (1) defendant's unauthorized or wrongful assumption of control dominion, or ownership over a plaintiff's personal property; (2) plaintiff's right in the property; (3) plaintiff's right to immediate possession of the property, absolutely and unconditionally; and (4) plaintiff's demand for possession of the property. *Van Diest Supply, Co. V. Shelby County State Bank*, 425 F.3d 437, 439 (7th Cir. 2005)(citing *Cirrincione v. Johnson*, 184 Ill.2d 109, 234 Ill.Dec. 455, 703 N.E.2d 67, 70 (Ill. 1988). In order for money to be the subject of conversion "it must be shown that he money claimed, or its equivalent, at all times belonged to the plaintiff and that the defendant converted it to his own use." See *National Union Fire Ins. Co. of Pittsburgh v. Wilkins-Lowe & Co., Inc.*, 29 F.3d 337, 340 (7th Cir. 1994)(quoting *In re Thebus*, 108 Ill. 2d 255, 91 Ill. Dec. 623, 628-29, 483 N.E.2d 1258, 1260-61 (1985)). The test emphasizes that the plaintiff must have an absolute and unconditional right to the property. Even with viewing all facts and reasonable inferences in favor of Plaintiff, Porter cannot do so in the instant case. Porter's conversion claim alleges that he has the right to a bonus payment from Time4Media. Even if Porter can establish that Time4Media owed him additional commissions payment pursuant to the Plan, Porter cannot show that he is owed any specifically identifiable amount of money. Additionally, Porter cannot factually establish that at all times any funds held by Time4Media belonged specifically to him. The Court therefore grants summary judgment for Defendants on Porter's conversion claim.

## D. ERISA Preemption

Lastly, Defendant argues that Plaintiff's claims for unpaid severance under the Wage Act and the state law claims are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq. Specifically, Defendant claims that Time4Media's written severance plan ("Severance Plan") is an employee welfare plan under ERISA. Because Section 514(a) of ERISA, codified at 29 U.S.C. § 1144(a), preempts all state law claims, thus Porter's claim under the Wage Act is preempted. Plaintiff argues that his claim for severance is not preempted, because Time4Media's severance Plan does not depend on "ongoing administrative scheme." *See Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 11 (1987); *Cvelbar v. CBI Ill., Inc.* 106 F.3d 1368, 1375 (7th Cir. 1997).

ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). By providing for broad preemption, Congress intended to create uniformity in the benefits law and to minimize administrative and financial burdens to plan administrators by eliminating conflicting directives. *Trs. of AFTRA Health Fund v. Biondi*, 303 F.3d 765, 774 (7th Cir. 2002). The Seventh Circuit has determined severance plans as employee benefit plans within the meaning of ERISA. *Sly v. P.R. Mallory & Co.*, 712 F.2d 1209, 1213 (7th Cir. 1983). In general, "ERISA preempts all state law claims for severance benefits." *Kreutzer v. A.O. Smith Corp.*, 951 F.2d 739, 743 (7th Cir. 1991). However, in order for a severance package to come within the ambit of ERISA, it must employ an "ongoing administrative scheme." *See Fort Halifax Packing*, 482 U.S. at 11-12; *Bowles v. Quantum Chemical Co.*, 266 F.3d 622, 631 (7th Cir 2001). To further explain the meaning of the term "ongoing," the court held that, if under the agreement, the employer has not assumed a responsibility to process claims and pay benefits "on

14

a regular basis," it "faces no periodic demands on its assets that create a need for financing and control," and a benefit plan subject to ERISA has not been established. *Fort Halifax*, 482 at 12. An employer's obligation may not be satisfied merely by "cutting a single check and making a single set of payments." *Bowles*, 266 F.3d at 631, *quoting Collins v. Ralston Purina Co.*, 147 F.3d 592, 595 (7th Cir. 1998). Rather, where a severance plan requires an employer to make "nonclerical judgment calls" on multiple occasions, an ongoing administrative scheme is implicated. *Collins*, 147 F.3d at 597 *citing Delaye v. Agripac, Inc.*, 39 F.3d 235, 238 (9th Cir. 1994)(stating that a welfare plan subject to subjective criteria, rather than arithmetical calculations or clerical determinations, implicates ERISA). "Simple or mechanical determinations do not necessarily require the establishment of ... an administrative scheme; rather, an employer's need to create an administrative system may arise where the employer, to determine the employee's eligibility for and level of benefits, must analyze each employee's particular circumstances in light of the appropriate criteria." *Cvelbar*, 106 F.3d at 1375.

Plaintiff contends that "the severance benefits due to plaintiff can be calculated through rudimentary, mechanical math. Taking the facts in the light most favorable to Porter, the Court has no facts before it that the disbursement of benefits to Porter would require anything more than a straightforward calculation of an applicable amount. *See Fort Halifax*, 482 U.S. at 11-12, 96 L. Ed. 2d 1, 107 S. Ct. 2211. The Court has no facts before it that Time4Media's severance plan would require an "ongoing administrative scheme" for payment of Porter's severance package.

## IV. Conclusion

For the reasons set forth above, Plaintiff's partial motion for summary judgment is DENIED.

Defendant's motion for summary judgment is GRANTED in part and DENIED in part. Specifically, Defendant's motion for summary judgment is GRANTED as to Counts II and IV and DENIED as to Counts I and III. Additionally, Plaintiff's request for a jury trial and prejudgment interest are dismissed. Defendants Wightman and Ford are dismissed from this action.

IT IS SO ORDERED.

10/30/06
Dated

The Honorable William J. Hibbler
United States District Court